# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **JOY CORCIONE, Individually, and On Behalf of All Others Similarly Situated,**<br>    **Plaintiff,** | §<br>§<br>§<br>§ | |
| **V.** | §<br>§ | **CIVIL ACTION NO. 3:14-cv-160** |
| **METHODIST HOSPITAL D/B/A HOUSTON METHODIST, HOUSTON METHODIST HOSPITAL, HOUSTON METHODIST–TEXAS MEDICAL CENTER, METHODIST HOSPITAL– HOUSTON, METHODIST HOSPITAL– TEXAS MEDICAL CENTER, AND METHODIST HOSPITAL SYSTEM,**<br>    **Defendant** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **JURY TRIAL DEMANDED** |

---

## PLAINTIFF'S BRIEF IN SUPPORT OF HER EXPEDITED MOTION TO CONDITIONALLY CERTIFY COLLECTIVE ACTION AND AUTHORIZE NOTICE

---

Filed by:

David W. Hodges
*Attorney-in-Charge for Plaintiff and Class Members*
Federal Bar No. 20460
State Bar No. 00796765
KENNEDY HODGES, LLP
711 W. Alabama Street
Houston, Texas 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
dhodges@kennedyhodges.com

Of counsel:

Galvin B. Kennedy
Federal Bar No. 20791
State Bar No. 00796870
KENNEDY HODGES, LLP
711 W. Alabama Street
Houston, Texas 77006
Telephone: 713-523-0001
Facsimile: 713-523-1116
gkennedy@kennedyhodges.com

# Table of Contents

Table of Authorities ................................................................................................ iii

I. INTRODUCTION & SUMMARY OF SPECIFIC RELIEF REQUESTED .................1

II. STATEMENT OF FACTS .........................................................................................2

   **A.** **Facts regarding Methodist Hospital and Class Members.**...........................................2

   **B.** **Facts regarding the common pay violation among all Class Members at Methodist Hospital.** ........................................................................................................3

     (1) Defendant's automatic meal break deduction policy is illegal because the "meal period" is not a bona fide meal period. .............................................................................3

     (2) Defendant's automatic meal deduction policy is illegal because it shifts the burden to the nurses to ensure proper payment of wages. ...........................................................5

     (3) Defendant's rule prohibiting overtime hours without preapproval conflicts directly with its policy of requiring nurses to claim, after the fact, that they worked through their meal periods. .........................................................................................................6

     (4) Plaintiff and Class Members are required to remain on the premises and on duty during unpaid meal periods. .........................................................................................7

III. ARGUMENTS AND AUTHORITIES ......................................................................9

   A. The standard for class certification under the FLSA is the two-stage *Lusardi* method, which is "lenient" and "typically results in conditional certification." ...........................9

   B. This Court should authorize notice in this case because Plaintiff clearly meets the lenient "similarly situated" standard. Hundreds of other nurses exist and they share similar job duties, are paid the same way, and were subject to company-wide automatic deduction policy. ...........................................................................................11

     (1) It is undisputed that hundreds of other nurses exist who are similarly situated with respect to every relevant aspect of their job duties and pay structure. .......................11

     (2) The pay practices at issue are common amongst all Class Members. ........................13

     (3) There is evidence that other individuals desire to opt in. ..........................................15

   C. Courts throughout the country have conditionally certified classes of nurses subject to automatic meal deductions under similar facts. ...........................................................16

   D. The proposed notice is timely, accurate and informative. The notice should be sent via regular mail and via email.................................................................................18

   E. The proposed limited discovery is essential to ensure timely notice. ...........................21

IV. CONCLUSION ......................................................................................................22

## Table of Authorities

**Cases**

*Albanil v. Coast 2 Coast, Inc.*, No. H-08-486, 2008 WL 4937565 (S.D. Tex. Nov.17, 2008) ..... 10

*Altier v. Worley Catastrophe Response, LLC*, No. 11-241, 2012 WL 161824 (E.D. La. Jan.18, 2012) ................................................................................................................................... 20

*Beall v. Tyler Techs., Inc.*, No. 2-08-CV-422, 2009 WL 3064689 (E.D. Tex. Sept. 23, 2009) ... 19, 21

*Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852 (N.D. Ill. 2013) ............................. 18

*Burkholder v. City of Fort Wayne*, No. 1:08-cv-273, 2010 WL 4457310 (N.D. Ind. Nov. 1, 2010) ................................................................................................................................... 14

*Butler v. Directsat USA, LLC*, 876 F. Supp. 2d 560 (D. Md. 2012) ........................................... 19

*Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09-85J, 2009 WL 1361265 (W.D. Penn. May 14, 2009) ................................................................................................................................... 17

*Carter v. Jackson-Madison Cnty. Hosp. Dist.*, No. 1:10-CV-01155, 2011 WL 1256625 (W.D. Tenn. Mar. 31, 2011) ........................................................................................................... 17

*Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200 (N.D.N.Y. 2009) ..................... 16

*Creely v. HCR Manorcare, Inc.*, 789 F. Supp. 2d 819 (N.D. Ohio 2011) .................................. 17

*Davis v. Mostyn Law Firm, P.C.*, No. 4:11-CV-02874, 2012 WL 163941 (S.D. Tex. Jan. 19, 2012) ................................................................................................................................... 21

*Denney v. Lester's, LLC*, No. 4:12-CV-377-JCH, 2012 WL 3854466 (E.D. Mo. Sept. 5, 2012) . 19

*Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 WL 5204149 (S.D. Tex. Dec. 11, 2008) ......................................................................................................... 11, 15

*Eggelston v. Sawyer Sportsbar, Inc.*, No. 4:09-3529, 2010 WL 2639897 (S.D. Tex June 28, 2010) .............................................................................................................................. 19, 21

*Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528 (S.D. Tex. 2008) ........................................... 13

*Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189 (N.D.N.Y. 2009) ........................ 16

*Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, No. 11-CV-592-WMC, 2013 WL 3287634 (W.D. Wis. Mar. 21, 2013) ............................................................................................. 10, 17

*Frye v. Baptist Memorial Hosp., Inc.*, No. 07-2708, 2008 WL 6653632 (W.D. Tenn. Sept. 16, 2008) ................................................................................................................................... 17

*Goudie v. Cable Commc'ns, Inc.*, No. 08-CV-507-AC, 2008 WL 4628394 (D. Or. Oct. 14, 2008) ................................................................................................................................... 19

*Hamelin v. Faxton-St. Luke's Healthcare*, No. 6:08-CV-1219, 2009 WL 211512 (N.D.N.Y. Jan. 26, 2009) ............................................................................................................................. 16

*Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856 (S.D. Tex. 2012) ................................. 9, 10, 15

*Hintergerger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 WL 3464134 (W.D.N.Y Oct. 21, 2009).................................................................................................................................16

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ........................................................18

*In re Deloitte & Touche, LLP Overtime Litig.*, No. 11-CIV-2461, 2012 WL 340114 (S.D.N.Y. Jan. 17, 2012)...................................................................................................................19

*Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 6928101 (N.D. Tex. Nov. 29, 2012) ..............................................................................................................................................19

*Kuznyetsov v. West Penn Allegheny Health Sys.*, No. 09-CV-379, 2009 WL 1515175 (W.D. Penn. June 1, 2009) .......................................................................................................16

*Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752 (W.D. Tenn. 2011) ...........................17

*Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755, 2011 WL 3235628 (E.D.N.Y. July 27, 2011) ....19

*Luvianos v. Gratis Cellular, Inc.*, No. H-12-1067, 2012 WL 6737498 (S.D. Tex. Dec. 10, 2012) ..............................................................................................................................................21

*Maynor v. Dow Chem. Co.,* No. G-07-0504, 2008 WL 2220394 (S.D. Tex. May 28, 2008) . 11, 15

*McCarragher v. Ryland Grp., Inc.*, No. 3-11-55, 2012 WL 4857575 (S.D. Tex. Oct. 11, 2012). 21

*McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794 (S.D. Tex. 2010)..........................................9

*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995) ....................................................10

*Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 2:10-CV-04175-NKL, 2011 WL 3794021 (W.D. Mo. Aug. 25, 2011) ..................................................................................................20

*Ohsann v. L.V. Stabler Hosp.*, No. 2:07-CV-0875-WKW, 2008 WL 2468559 (M.D. Ala. June 17, 2008).......................................................................................................................................18

*Phelps v. MC Comm'ns, Inc.*, No. 2:11-CV-00423-PMP-LRL, 2011 WL 3298414 (D. Nev. Aug. 1, 2011).......................................................................................................................................19

*Pippins v. KPMG LLP,* No. 11-CIV-0377, 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012)................19

*Potoski v. Wyoming Valley Health Care Sys.*, No. 3:11-CV-582, 2013 WL 6731035 (M.D. Penn. Dec. 19, 2013)................................................................................................... 6, 12, 16

*Prater v. Commerce Equities Mgmt. Co.,* No. Civ. A. H-07-2349, 2007 WL 4146714 (S.D. Tex. Nov.19, 2007))...............................................................................................................15

*Reich v. Davis*, 50 F.3d 962 (11th Cir. 1995).............................................................................19

*Rogers v. HCA Health Servs. of Tenn., Inc.*, No. 3:09-CV-1173, 2013 WL 3224026 (M.D. Tenn. June 25, 2013)...................................................................................................... 11, 17

*Ryan v. Staff Care, Inc*., 497 F. Supp. 2d 820 (N.D. Tex. 2007)..................................................13

*Santiago v. Amdocs, Inc.*, No. C-10-4317-SI, 2011 WL 6372348 (N.D. Cal. Dec. 19, 2011)......19

*Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990 (E.D. Tex. 2011).......................21

*Tolentino v. C & J Spec-Rent Servs., Inc.*, 716 F. Supp. 2d 642 (S.D. Tex. 2010) .....................10

*Vargas v. Richardson Trident Co.*, No. H-09-1674, 2010 WL 730155 (S.D. Tex. Feb. 22, 2010) .................................................................................................................................13

*Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807 (S.D. Tex. 2003) ....................................12

*Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462 (S.D. Tex. 2012)....................................1, 21

*White v. Integrated Elec. Techs., Inc.,* No. 11-2186, 2013 WL 2903070 (E.D. La. June 13, 2013) .................................................................................................................................19

*Woods v. RHA/Tenn. Grp. Homes, Inc.*, 803 F. Supp. 2d 789 (M.D. Tenn. 2011) .....................17

*Zannikos v. Oil Inspections (U.S.A.) Inc.,* No. 4:12-cv-02508 (S.D. Tex. May 14, 2013) (order granting conditional certification)........................................................................................19

## Statutes

29 U.S.C. § 207.............................................................................................................................3

29 U.S.C.A. § 256 (West)...........................................................................................................20

Tex. Bus. & Com. Code Ann. § 322 *et. al.* (Vernon) ................................................................20

## Regulations

29 C.F.R. § 541.400 ......................................................................................................................6

29 C.F.R. § 785.13. .......................................................................................................................6

29 C.F.R. § 785.19(a)....................................................................................................................4

## I.   INTRODUCTION & SUMMARY OF SPECIFIC RELIEF REQUESTED

Joy Corcione ("Plaintiff") follows in the footsteps of many nurses who have spoken up in recent years against hospitals across the country that illegally deny wages to nurses. Indeed, over 16 cases have been conditionally certified against healthcare facilities under similar facts. Under its illegal pay policy and practice, Defendant automatically deducts a thirty-minute "meal period" from every shift worked when a nurse works for at least an eight-hour period, even though Defendant requires the nurses to remain "on duty" during these unpaid meal periods. In addition, nurses are subject to frequent interruptions during their unpaid meal periods, or these meal periods are missed altogether. Because Plaintiff and Class Members are never completely relieved of their duties, Defendant's automatic deduction policy and practice violates the law.

At this juncture, Plaintiff does not seek summary judgment or a preliminary ruling on the merits. Plaintiff only seeks court authority, pursuant to 29 U.S.C. § 216(b), to mail and email a Notice of Rights[1] and a Consent Form[2] to all "similarly situated" aggrieved employees. Under the lenient test used in the Fifth Circuit, the only issue before the Court is whether Plaintiff is similarly situated with respect to the alleged pay practice and job duties.[3]

As part of her request for notice, Plaintiff requests an order compelling Methodist Hospital[4] (hereinafter referred to as "Defendant" or "Methodist") to produce contact information for all nurses who worked more than forty hours in any workweek, were subject to the automatic

---

[1] App. p. 1–3 (Notice of Rights).

[2] App. p. 4–5 (Consent Form).

[3] *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 468 (S.D. Tex. 2012) ("For the class representative to be considered similarly situated to the potential opt in class members, the class representative must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions.").

[4] Methodist Hospital d/b/a Houston Methodist, Houston Methodist Hospital, Houston Methodist–Texas Medical Center, Methodist Hospital–Houston, Methodist Hospital–Texas Medical Center, and Methodist Hospital System.

meal break deduction, and were employed by Defendant at Houston Methodist Hospital,[5] Houston Methodist Willowbrook Hospital,[6] or Houston Methodist San Jacinto Hospital[7] during the last three years ("Class Members").[8] **This motion is supported by declarations from four nurses who worked at those specific hospitals for long periods.**[9]

During the relevant period, Defendant employed hundreds of nurses responsible for direct patient care across its seven Houston-area hospital facilities. These nurses were subject to the identical FLSA wage violations alleged by the named Plaintiff. The uniformity of the policy stems from Defendant using the same time tracking system for all nurses and programming the system to make the automatic deduction.

Defendant will likely take the position that its automatic meal break policy complied with the FLSA. However, such arguments prematurely go the merits. The sole issue before the Court is whether Plaintiff is similarly situated to the proposed Class. Given the homogenous nature of the group, unified corporate policy, and identical wage violation applied uniformly by Defendant across all nurses, this case is well-suited for collective treatment.

## II.   STATEMENT OF FACTS

### A.  Facts regarding Methodist Hospital and Class Members.

Defendant operates a system of seven hospitals that provides healthcare services throughout the Greater Houston Area.[10] Defendant employs over 14,000 people across its seven facilities. Defendant classified the Plaintiff and Class Members as FLSA non-exempt employees

---

[5] This facility is located in the Texas Medical Center in Houston, Texas.

[6] This facility is also referred to as "Willowbrook – Northwest Houston," and is located in Houston, Texas.

[7] This facility is also referred to as "San Jacinto / Baytown – East Houston," and is located in Baytown, Texas.

[8] Plaintiff reserves the right to move for class notice to nurses at other Methodist hospitals.

[9] App. p. 6–8 (Declaration of Corcione); App. p. 9–10 (Declaration of Lute); App. p. 11–12 (Declaration of Hall); App. p. 13–14 (Declaration of McCray).

[10] *See* App. p. 15–16 (Methodist Hospital Locations), http://www.houstonmethodist.org/ourHospitals.cfm?id=36837.

and paid them on an hourly basis.[11] As such, the Plaintiff and Class Members were entitled to overtime compensation for all hours worked over forty in a single workweek.

Plaintiff currently seeks class notice only to current and former nurses at Houston Methodist Hospital (Texas Medical Center), Houston Methodist Willowbrook Hospital, and Houston Methodist San Jacinto Hospital. Plaintiff Corcione worked as a nurse at Houston Methodist Hospital.[12] Upon hiring, Methodist puts all new nurses through an orientation and stresses, for example, the importance of achieving exceptional care through patient safety.[13] To accomplish this objective, Defendant's nurses were required to adhere to its policies and procedures regarding patient care.[14] For example, nurses involved in direct patient care were required to maintain an accurate, contemporaneous health care record and respond to their patients' needs immediately.[15] Defendant required the understaffed nurses at its hospitals to meet these goals.

### B. Facts regarding the common pay violation among all Class Members at Methodist Hospital.

#### (1) Defendant's automatic meal break deduction policy is illegal because the "meal period" is not a bona fide meal period.

The FLSA requires employers to pay non-exempt employees one and one-half of their regular hourly rate for hours worked over forty in a single workweek. 29 U.S.C. § 207. Defendant's policy of automatically deducting thirty minutes for a meal break violates the FLSA. On their face, some automatic meal break deductions do not amount to a *per se* FLSA violation.

---

[11] *See* App. p. 6, ¶ 2 (Declaration of Corcione); App. p. 9, ¶ 5 (Declaration of Lute); App. p. 11, ¶ 1(Declaration of Hall); App. p. 13, ¶ 3 (Declaration of McCray).

[12] *See* App. p. 6, ¶ 1 (Declaration of Corcione).

[13] *See* App. p. 58 (Methodist Hospital Employee Handbook (referred to herein as "Employee Handbook")); App. p. 6, ¶¶ 3, 4 (Declaration of Corcione) (authenticating the Employee Handbook). *See also* App. p. 13, ¶ 2 (Declaration of McCray).

[14] *See* App. p. 6, ¶ 3 (Declaration of Corcione).

[15] *See id.*

3

Employers are not required to pay their employees for "bone fide meal periods." However, to qualify as a "bone fide meal period," certain conditions must be met:

> The employee must be **<u>completely</u>** relieved from duty for the purpose of eating regular meals. . . . **The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.** For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.[16]

The Employee Handbook, by contrast, plainly states how the Defendant's policy veers from this bright line rule requiring nurses to be "completely relieved from duty":

> "For a meal period to be unpaid for a nonexempt employee under the Fair Labor Standards Act (FLSA), the meal period should ***generally*** be an uninterrupted period of time."[17]

Methodist built into its automatic deduction policy an allowance for interruptions during the meal period. However, under the law, a meal period is bona fide only if nurses are **completely** relieved of their duties. Under Methodist's written policy, **a meal period is unpaid even when interrupted with active work**. Methodist acknowledges that nurses will be interrupted during their so-called meal periods, yet the hospital still deducts the full thirty minutes. In the realm of unpaid meal break cases, the employer's written policy rarely states the pay violation explicitly, yet that is exactly what Methodist has done here.

This written policy comports with actual experience: Methodist in practice deducts thirty minutes even though nurses are not "completely relieved" from duty and suffer interruptions.[18] Even on the rare occasion that a nurse manages to find a period when no interruptions occur, that time is still compensable under the law because he was not completely relieved of his duties.

---

[16] 29 C.F.R. § 785.19(a) (emphasis added).

[17] App. p. 62 (Employee Handbook) (emphasis added).

[18] *See* App. p. 6–7, ¶¶ 7, 10–11 (Declaration of Corcione); App. p. 9–10, ¶¶ 6, 8–10 (Declaration of Lute); App. p. 11–12, ¶¶ 5, 7–9 (Declaration of Hall); App. p. 13–14, ¶¶ 5, 7 (Declaration of McCray).

4

The regulations speak of "active or inactive" duties for a good reason: the requirement to be available to respond to patient calls, nurse calls, doctor calls, and codes—even when none are actually triggered—is an "inactive" but nonetheless real duty of nurses.[19] It is precisely this continuity of inactive and active duties throughout the shift that makes an automatic meal deduction for nursing professionals improper, even though they might be allowed in other industries or professions. Putting the merits aside, the Employee Handbook alone constitutes sufficient evidence that Plaintiff and Class Members are similarly situated, thereby justifying notice independent of other reasons.

### *(2) Defendant's automatic meal deduction policy is illegal because it shifts the burden to the nurses to ensure proper payment of wages.*

The Class Members consist of all of Defendant's nurses who worked at the Houston Methodist Hospital, Houston Methodist Willowbrook Hospital, and Houston Methodist San Jacinto Hospital.[20] The Class Members are subject to the same automatic meal break deduction policy.[21] Under this policy, a 30-minute meal period is automatically deducted from their pay for each shift lasting at least eight hours.[22]

If a nurse wishes to disrupt the inertia of the automatic time deduction, Methodist requires him to correct his own time card or "cancel" the meal period deduction.[23] Putting aside the logistics, this policy reverses the intention of the federal law by improperly shifting the

---

[19] *See* App. p. 7, ¶ 10 (Declaration of Corcione); App. p. 9, ¶¶ 6, 8 (Declaration of Lute); App. p. 11, ¶¶ 5, 7 (Declaration of Hall); App. p. 13–14, ¶¶ 5, 7 (Declaration of McCray).

[20] *See* App. p. 6, ¶ 1 (Declaration of Corcione) (Houston Methodist Hospital); App. p. 9, ¶ 1 (Declaration of Lute) (Houston Methodist Hospital); App. p. 11, ¶ 1 (Declaration of Hall) (Houston Methodist Willowbrook Hospital); App. p. 13, ¶ 1 (Declaration of McCray) (Houston Methodist San Jacinto Hospital).

[21] *See* App. p. 6, 8, ¶¶ 6–7, 14 (Declaration of Corcione); App. p. 9–10, ¶¶ 4–5, 12 (Declaration of Lute); App. p. 11–12, ¶¶ 3–4, 11 (Declaration of Hall); App. p. 13–14, ¶¶ 3–4, 11 (Declaration of McCray).

[22] *See* App. p. 6–7, ¶¶ 6–7 (Declaration of Corcione); p. 9, ¶¶ 4–5 (Declaration of Lute); App. p. 11, ¶¶ 3–4 (Declaration of Hall); App. p. 13, ¶¶ 3–4 (Declaration of McCray). *See also* App. p. 62 (Employee Handbook).

[23] *See id.*

burden from the employer to the employee to ensure proper payment, a violation of 29 C.F.R. §

785.13.[24] The burden to track and record work hours, and to monitor whether work is being

performed, is on the **employer**—not the employee:

> [I]t is the duty of the management to exercise its control and see that the work is
> not performed if it does not want it to be performed.  It cannot sit back and
> accept the benefits without compensating for them. The mere promulgation of a
> rule against such work is not enough.  Management has the power to enforce the
> rule and must make every effort to do so.[25]

Defendant's policy discards its responsibility to make sure nurses are paid for all hours worked.

Under Defendant's policy, the hospital can avoid paying wages to nurses who remain on duty

even with Defendant's full knowledge merely because the nurse does not take the time to jump

over the bureaucratic hurdles. Regardless of the merits, the policy which forms the basis of the

violation applies equally to all nurses, and thereby justifies notice independent of other reasons.

### (3) *Defendant's rule prohibiting overtime hours without preapproval conflicts directly with its policy of requiring nurses to claim, after the fact, that they worked through their meal periods.*

Defendant has instituted a pay policy under which employees are required to obtain a

supervisor's approval ***before*** overtime hours are accrued.[26] Class Members may accrue

additional overtime hours by cancelling the automatic meal break deduction. This puts nurses in

a dilemma: either forego claiming the hours worked or turn in overtime hours in violation of the

written policy requiring pre-approval. Indeed, under the written policy requiring pre-approval for

overtime, supervisors may and do deny the unapproved overtime hours when submitted via meal

period cancellations. Moreover, Methodist disciplines employees because the overtime was not

---

[24] *See also Potoski v. Wyoming Valley Health Care Sys.*, No. 3:11-CV-582, 2013 WL 6731035, at *4–*7 (M.D. Penn. Dec. 19, 2013) (granting conditional certification under a policy which also shifted the burden from employer to employee to ensure they are compensated for all time worked).

[25] 29 C.F.R. § 785.13.

[26] *See* App. p. 39 (Employee Handbook) ("Employees should obtain authorization from management ***prior*** to working overtime.") (emphasis added).

pre-approved. This policy discourages employees from receiving payment to which they are entitled for their work, and this gives Defendant a way to unjustly deny overtime compensation. As a result of Defendant's pay policies, Plaintiff and Class Members frequently worked, and continue to work, during meal periods for which Defendant provides no compensation. For certification purposes, it is sufficient to conclude at this time that both the automatic meal deduction and the pre-approval overtime rules apply equally to all nurses, thereby justifying notice independent of other reasons.

### (4) Plaintiff and Class Members are required to remain on the premises and on duty during unpaid meal periods.

Even though Methodist automatically deducts thirty minutes from every shift, Plaintiff and Class Members are not able to leave the premises during their unpaid, 30-minute meal period. Indeed, the Employee Handbook provides that employees must, "remain at work until the completion of the assigned workday."[27] The thirty minutes allotted for the meal period is too short to leave the premises and return in time to comply with the strict tardiness rules.  Methodist even warns nurses that, "Your attendance record is a major consideration in your performance review."[28] Due to the inherent demands of the nursing profession, nurses are often required to remain in the building, or even to remain on the unit floor.[29] Moreover, Plaintiff and Class Members are required to carry a hospital-issued phone or communication device during their entire shifts.[30] These employees are required to answer calls[31] or risk committing patient abandonment.

---

[27] App. p. 55 (Employee Handbook).

[28] *Id.*

[29] *See* App. p. 7, ¶ 8 (Declaration of Corcione); App. p. 14, ¶ 9 (Declaration of McCray).

[30] *See* App. p. 7, ¶ 10 (Declaration of Corcione); App. p. 9, ¶¶ 6, 8 (Declaration of Lute); App. p. 11, ¶ 7 (Declaration of Hall); App. p. 13, ¶ 5 (Declaration of McCray).

[31] *See* App. p. 67 (Employee Handbook) ("Employees should answer phone promptly").

For example, responding to Codes is a primary job duty of nurses. A Code typically refers to a situation in which a patient is in imminent danger. Nurses may be required to remain on the floor during the entire shift, including during the thirty minutes automatically deducted for meal breaks.[32] In practice, Defendant's nurses are not relieved of their responsibility to respond to Codes during their unpaid meal periods.[33] The continuity of this duty derives from the hospital's goal of putting patient care first. To provide the best care for patients, employees are required to respond to Codes during their unpaid meal periods. This requirement prevents Class Members from leaving the facility during their unpaid meal periods. Plaintiff and Class Members were, and still are, subject to interruptions during unpaid meal periods.

Responding to "Codes" is only one of a plethora of interruptions that occur throughout the nurses' shifts. The attached declarations of Corcione, Lute, Hall, and McCray consistently described the types of situations to which nurses must respond and that do not suddenly stop while they eat a sandwich. The interruptions were made by the unit secretary, other nurses, doctors, patients, patients' families, laboratory personnel, admissions personnel, ancillary personnel such as physical therapy workers, pharmacy staff, case managers and other hospital workers.[34]   These interruptions were made either in person, by finding nurses on the floor, or by phone using the hospital-issued phone nurses are assigned at the beginning of each shift.[35] The Class Members are also interrupted when they are required to handle an admission immediately

---

[32] *See* App. p. 7, ¶ 8 (Declaration of Corcione).

[33] *See* App. p. 13, ¶ 7 (Declaration of McCray).
[34] *See* App. p. 7, ¶ 10 (Declaration of Corcione); App. p. 9, ¶ 8 (Declaration of Lute); App. p. 11, ¶ 7 (Declaration of Hall); App. p. 13, ¶ 6 (Declaration of McCray).
[35] *See* App. p. 7, ¶ 10; (Declaration of Corcione); App. p. 9, ¶ 8 (Declaration of Lute); App. p. 11, ¶ 7 (Declaration of Hall); App. p. 13, ¶¶ 6–7 (Declaration of McCray).

or receive laboratory results.[36] The declarations attached hereto describe standard interruptions that are part of nursing jobs in general. **The declarants based their statements on their experiences working across three Methodist hospitals, over a combined 17 years, and either personally working in or having discussions with nurses who have worked in a combined 8 different units or departments.**[37] The interruptions they describe are common across all nurses.

## III. <u>ARGUMENTS AND AUTHORITIES</u>

### A. The standard for class certification under the FLSA is the two-stage *Lusardi* method, which is "lenient" and "typically results in conditional certification."

This court has ruled on numerous motions for class notice under 216(b) of the FLSA and is well acquainted with the lenient standard. Plaintiff, therefore, will not belabor her argument with a discussion of the proper standard other than the following emphasis on just how low the standard remains in the Fifth Circuit. At this stage, the Court considers the threshold issue of whether the Plaintiff has provided sufficient proof to show that a class of similarly situated individuals exists. *See Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 860 (S.D. Tex. 2012) (Rosenthal, J.). The Court makes this determination and decides whether notice should be given to potential class members based only on the pleadings and any affidavits which have been submitted by the plaintiff. *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010) (Rosenthal, J.). In *McKnight*, this Court stated: "**Because the court has minimal evidence, this determination is usually made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class** that provides potential class

---

[36] *See* App. p. 7, ¶ 10 (Declaration of Corcione); App. p. 9, ¶¶ 6, 8 (Declaration of Lute); App. p. 13, ¶ 6 (Declaration of McCray).

[37] *See* App. p. 6, ¶ 1 (Declaration of Corcione); App. p. 9–10, ¶¶ 1, 10 (Declaration of Lute); App. 11–12, ¶¶ 1, 9 (Declaration of Hall); App. p. 13, ¶ 1 (Declaration of McCray).

members with the notice and the opportunity to opt in." *Id.* (emphasis added) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 n.8 (5th Cir. 1995).

Although the degree to which potential opt-in plaintiffs must be similarly situated has not been precisely defined, courts agree that "[t]he positions need not be identical, but they must be similar." *Heeg*, 907 F. Supp. 2d at 862. Indeed, "[T]he court need not find uniformity in each and every aspect of employment to determine [that] a class of employees is similarly situated. The remedial nature of the FLSA and Section 216 militate strongly in favor of allowing cases to proceed collectively." *See Tolentino v. C & J Spec-Rent Servs., Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010) (*citing Albanil v. Coast 2 Coast, Inc.*, No. H-08-486, 2008 WL 4937565, at *3 (S.D. Tex. Nov.17, 2008).

Some employers attempt to defeat class notice by arguing the merits of the underlying FLSA violation instead of focusing on the common policy or plan that applies to the employees. *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 856, 861 (S.D. Tex. 2012) (Rosenthal, J.) ("Discovery usually has not been conducted at this stage, and courts do not review the underlying merits of the action in determining whether to grant conditional certification."). For example, in *Fosbinder-Bittorf*, the defendant tried to argue against conditional certification based on the alleged lawfulness of its meal period deduction policy, the accuracy of its policy restricting nurses to the hospital premises, the differences regarding how often meal break deductions are cancelled, and individual factual determinations regarding actual knowledge.[38] The court rejected all of these arguments because they went to the merits of the case and were irrelevant at the

---

[38] *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, No. 11-CV-592-WMC, 2013 WL 3287634, at *5–*7 (W.D. Wis. Mar. 21, 2013).

notice stage.[39] In that case, the court granted conditional certification for all nurses who were denied wages for the on-duty meal periods.[40]

A plaintiff must only make a minimal showing that: "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Id.* Some courts, including this one, have rightfully questioned the propriety of the judicially-created third prong as a prerequisite to class notice.[41] Nonetheless, Plaintiff addresses each point below.

**B. This Court should authorize notice in this case because Plaintiff clearly meets the lenient "similarly situated" standard. Hundreds of other nurses exist and they share similar job duties, are paid the same way, and were subject to company-wide automatic deduction policy.**

*(1) It is undisputed that hundreds of other nurses exist who are similarly situated with respect to every relevant aspect of their job duties and pay structure.*

This case is in its inception, with no discovery yet conducted between the parties; however, the overwhelming evidence supports the assertion that the nurses are similarly, if not identically, situated. Certainly the evidence adduced in this motion and brief satisfies the lenient standard under the applicable law.[42]

---

[39] *Id.*

[40] *Id.* at *4, *7.

[41] Some courts have required evidence of each of these three factors. *See, e.g., Maynor v. Dow Chem. Co.,* No. G-07-0504, 2008 WL 2220394, at *6 (S.D. Tex. May 28, 2008). Other courts have rejected the third element. *See, e.g., Dreyer v. Baker Hughes Oilfield Operations, Inc.,* No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008). Judge Rosenthal recently expressed concern over the requirement to demonstrate that other individuals want to opt-in. *See* App. p. 101–02, 13:7–14:14 (Transcript of Discovery Hearing, *Coronado v. D N.W. Houston, Inc.* (May 6, 2014) (No. 4-13-cv-02179) ("My concern is that there may be a lot of influences and reasons why people who are not given certain assurances that notice alone can uniquely provide, would not join...")).

[42] *See Rogers v. HCA Health Servs. of Tenn., Inc.,* No. 3:09-CV-1173, 2013 WL 3224026 at *2–*4 (M.D. Tenn. June 25, 2013) (finding that the Plaintiff's affidavit and a news article describing the employer's deliberate understaffing was sufficient to grant conditional certification of a class of non-exempt employees subject to an automatic meal break deduction).

In *Potoski*, the Defendant tried to argue against conditional certification by presenting eight declarations from employees who did not want to join the lawsuit and who described its alleged policy on canceling the automatic deduction.[43] The court stated that this argument was inappropriate at this stage because it went to the merits, and the court would consider the matter at the second stage.[44] The court granted conditional certification for a class of all hourly employees subject to the meal break deduction policy.[45]

Here, Plaintiff and the potential Class Members are all hourly employees, asserting precisely the same claim (failure to pay overtime), that arises from precisely the same policy (Defendant's automatic meal break deduction regardless of whether the nurses' meal breaks were missed or interrupted). In fact, Defendant's challenged policy, by definition, applies to every member of the proposed class and the universal application of the exemption provides a clear "factual nexus" tying Plaintiff and the proposed class "together as victims of an alleged policy or practice." *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003).

Plaintiff and Class Members are responsible for direct patient care and perform similar job duties in that respect. Their job duties include, but are not limited to, monitoring and assisting patients, locating and gathering medical equipment and supplies, administering medication and/or treatment, and reviewing or completing charting of medical care.[46] Moreover, Plaintiff and Class Members are often interrupted during meal periods or miss meal periods altogether because their job duties involve caring for the medical needs of Defendant's patients.[47]

---

[43] *Potoski v. Wyo. Valley Health Care Sys.*, No. 3:11-CV-582, 2013 WL 6731035, at *5 (M.D. Penn Dec. 18, 2013).

[44] *Id.*

[45] *Id.* at *7–*8 (declining to limit the size or scope of the class until discovery was complete).

[46] *See* App. p. 6–7, ¶¶ 3, 9–10 (Declaration of Corcione); App. p. 9, ¶¶ 7–8 (Declaration of Lute); App. p. 11, ¶¶ 6–7 (Declaration of Hall); App. p. 13–14, ¶ 7 (Declaration of McCray).

[47] *See* App. p. 6–7, ¶¶ 3, 7–8, 10 (Declaration of Corcione); App. p. 9, ¶ 8 (Declaration of Lute); App. p. 11, ¶ 7 (Declaration of Hall); App. p. 13–14, ¶ 6–7 (Declaration of McCray).

These interruptions are for similar reasons, specifically that patients require immediate care and/or assistance; and that employees receive calls on their hospital-issued phone from doctors, nurses, other hospital personnel, patients, or the patients' family members.[48]

In short, the nurses are similarly situated for FLSA purposes in every material respect. This is precisely when conditional certification is most appropriate. *See, e.g., Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007). Indeed, although a single policy or practice is not required for class certification, in this case the pay practice at issue affected every nurse in precisely the same way, and every nurse was subject to the exact same violation.

### *(2) The pay practices at issue are common amongst all Class Members.*

The fact that other nurses are geographically dispersed across more than one hospital facility is of no significance because geographic commonality is not necessary to meet the "similarly situated" requirement for a FLSA collective action. *See Vargas v. Richardson Trident Co.*, No. H-09-1674, 2010 WL 730155, at *10 (S.D. Tex. Feb. 22, 2010) (stating that "geographic location is not relevant" to the FLSA conditional certification analysis); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 539–40 (S.D. Tex. 2008) (finding that the employees were "similarly situated" because they were subject to the same FLSA violation, even though they were store managers working in various locations under different individuals). Nevertheless, the declarations attached hereto establish that nurses responsible for direct patient care at the Texas Medical Center, Willowbrook, and San Jacinto/Baytown hospitals were paid precisely the same way.

The policies and understaffing maintained by Defendant do not allow Plaintiff and Class Members to be "unavailable" so they can actually use the 30-minute unpaid meal period.[49] As

---

[48] *See* App. p. 7, ¶ 10 (Declaration of Corcione); App. p. 9, ¶ 8 (Declaration of Lute); App. p. 11, ¶ 7 (Declaration of Hall); App. p. 13, ¶ 6 (Declaration of McCray).

13

such, Plaintiff and Class Members remain on-duty for their entire shifts but do not receive pay for thirty minutes of work per day.

Here, the facts as alleged clearly establish that the Plaintiffs and Class Members are subject to a common policy of the automatic meal break deduction even though they are frequently interrupted during unpaid meal periods or miss the meal period altogether.[50] They performed the same duties and had the same responsibilities.[51] They were all paid an hourly rate.[52]

Moreover, the time records in the possession of Defendant are common to all class members and will show precisely the number of hours worked by the Plaintiff and Class Members. In addition, the identity of the Class Members is easily determinable from Defendant's records. Further, the compensation paid to the Class Members is easily identified by the records. Therefore, a collective action is the ideal means to resolve the claims of the Plaintiff and Class Members. The economies of scale envisioned by the FLSA collective action were meant for cases of this nature.

Finally, the legal issues in this case are the same amongst the Plaintiff and Class Members. Each nurse performed similar duties and was classified as non-exempt. Consequently, a decision with respect to Plaintiff would apply equally to all Class Members. *See Burkholder v. City of Fort Wayne*, No. 1:08-cv-273, 2010 WL 4457310, at *3 (N.D. Ind. Nov. 1, 2010) (granting certification of FLSA case in part because "the City of Fort Wayne has not articulated

---

[49] *See* App. p. 7, ¶ 12 (Declaration of Corcione).

[50] *See* App. p. 6–7, ¶¶ 4, 7, 11 (Declaration of Corcione); App. p. 9–10, ¶¶ 4, 9 (Declaration of Lute); App. p. 11–12, ¶¶ 3–4, 8 (Declaration of Hall); App. p. 13–14, ¶¶ 4–5, 11 (Declaration of McCray).

[51] *See* App. p. 6–7, ¶¶ 3, 8–10 (Declaration of Corcione); App. p. 9, ¶¶ 6–8 (Declaration of Lute); App. p. 11, ¶¶ 5–7 (Declaration of Hall); App. p. 13–14, ¶¶ 6–8 (Declaration of McCray).

[52] *See* App. p. 6, ¶ 2 (Declaration of Corcione); App. p. 9, ¶ 5 (Declaration of Lute); App. p. 11, ¶ 1 (Declaration of Hall); App. p. 13, ¶ 3 (Declaration of McCray).

any particularized defenses in this action, that is, their defenses would apply to all Plaintiffs, not just a particular Plaintiff"). Therefore, there are no individualized defenses.  Accordingly, class notice should be issued.

### (3) There is evidence that other individuals desire to opt in.

Although some courts have required evidence that other aggrieved individuals desire to "opt into" the lawsuit,[53] courts in this district and others have held that a plaintiff seeking class certification need not present evidence at this stage. *See, Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008). Specifically, the court in *Dreyer* stated that "this is not a statutory requirement and several courts have rejected it." *Id*.

However, if this Court were to require such evidence, Plaintiff has provided it. In addition to her own declaration,[54] Plaintiff has provided the declarations of three other employees.[55] The declarations attached to this motion make clear that there are other nurses who are similarly situated. This is the same quantum of evidence presented in *Heeg v. Adams* when the court conditionally certified a collective action. *See Heeg*, 907 F. Supp. 2d at 861–62 (declaration of named plaintiff and one opt-in). Moreover, a court-supervised notice with the appropriate notification about the anti-retaliation provision of the FLSA would calm the fears of Class Members and allow them to act on their interest to join.

---

[53] *See, e.g., Maynor*, 2008 WL 2220394, at *6 (citing *Prater v. Commerce Equities Mgmt. Co.,* No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov.19, 2007)).

[54] App. p. 6–8 (Declaration of Corcione).

[55] App. p. 9–10 (Declaration of Lute); App. p. 11–12 (Declaration of Hall); App. p. 13–14 (Declaration of McCray).

**C. Courts throughout the country have conditionally certified classes of nurses subject to automatic meal deductions under similar facts.**

Plaintiff is not the first hospital employee to challenge the improper meal break deduction policy.  Courts in many other jurisdictions regularly have conditionally certified cases involving similar unlawful automatic meal break deduction policies in hospitals.  The following is a partial list of other cases that have been certified under facts virtually identical to the facts in this case:

1. *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200 (N.D.N.Y. 2009) (granting conditional certification of class of employees responsible for patient care and treatment—including registered nurses, licensed practical nurses, nurse practitioners, and certified nurses' assistants—at one hospital facility claiming the hospital was understaffed and they were required to be available at all times during their shifts, even though they were subject to an automatic meal break deduction);

2. *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189 (N.D.N.Y. 2009) (granting conditional certification of class of employees involved in direct patient care—including nurses—claiming unlawful meal break deductions when they were required to attend to patients' needs during their breaks and hospital administration had knowledge that they frequently worked during unpaid meal breaks);

3. *Hintergerger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 WL 3464134 (W.D.N.Y Oct. 21, 2009) (granting conditional certification of a class of employees involved in direct patient care at seven of the defendant's in-patient facilities where plaintiffs had personal knowledge of the violation; plaintiffs were subject to the same automatic meal break deduction and the Defendant had knowledge that employees worked during the deduction period);

4. *Hamelin v. Faxton-St. Luke's Healthcare*, No. 6:08-CV-1219, 2009 WL 211512 (N.D.N.Y. Jan. 26, 2009) (granting conditional certification of class of employees responsible for patient care and treatment at two hospital facilities claiming the hospital was understaffed and patient care responsibilities kept them from taking a break, even though they were subject to an automatic meal break deduction);

5. *Potoski v. Wyoming Valley Health Care Sys.*, No. 3:11-CV-582, 2013 WL 6731035 (M.D. Penn. Dec. 19, 2013) (granting conditional certification and class notice to all hospital employees subject to an automatic meal break deduction and declining to limit the class until the completion of discovery; plaintiffs alleged cancellation policy was discouraged by managers, who understaffed departments and observed work completed during unpaid meal breaks);

6. *Kuznyetsov v. West Penn Allegheny Health Sys.*, No. 09-CV-379, 2009 WL 1515175 (W.D. Penn. June 1, 2009) (granting conditional certification for all non-exempt

16

employees, regardless of job title or facility location, because they were all subject to the same automatic meal break deduction policy);

7. *Camesi v. Univ. of Pittsburgh Med. Ctr.,* No. 09-85J, 2009 WL 1361265 (W.D. Penn. May 14, 2009) (granting conditional certification and notice to **30,000 non-exempt** employees subject to an automatic meal break deduction when the policy placed the burden on the employee to ensure that they were paid properly);

8. *Rogers v. HCA Health Servs. of Tenn., Inc.*, No. 3:09-DV-1173, 2013 WL 3224026 (M.D. Tenn. June 25, 2013) (granting conditional certification when the hospital was understaffed and employees were not trained properly regarding reporting time worked during meal breaks, which contributed to employees working during their meal breaks);

9. *Creely v. HCR Manorcare, Inc.*, 789 F. Supp. 2d 819 (N.D. Ohio 2011) (granting conditional certification for employees of assisted living and nursing facilities when they were not fully relieved of their duties during meal breaks but were subject to an automatic deduction policy for that time);

10. *Woods v. RHA/Tenn. Grp. Homes, Inc.*, 803 F. Supp. 2d 789 (M.D. Tenn. 2011) (granting conditional certification for employees of a live-in facility for people who are developmentally disabled when the employees were similarly situated under a common automatic meal break deduction policy);

11. *Carter v. Jackson-Madison Cnty. Hosp. Dist.*, No. 1:10-CV-01155, 2011 WL 1256625 (W.D. Tenn. Mar. 31, 2011) (granting conditional certification to a class of employees subject to an automatic meal break deduction claiming they were never relieved of job responsibilities during those breaks and had to respond to pages and requests from patients, co-workers, and supervisors);

12. *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752 (W.D. Tenn. 2011) (granting conditional certification and authorizing notice to a class of all hourly paid employees subject to an automatic meal break deduction claiming that the policy shifted the burden to the employees of ensuring proper payment of unpaid meal breaks and claiming that they were not relieved of job duties during that time);

13. *Frye v. Baptist Memorial Hosp., Inc.*, No. 07-2708, 2008 WL 6653632 (W.D. Tenn. Sept. 16, 2008) (granting conditional certification of hourly employees of defendant's hospital facility and three other satellite branches claiming to be subject to an automatic meal break deduction even their they often could not take an uninterrupted lunch break);

14. *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, No. 11-CV-592-WMC, 2013 WL 3287634 (W.D. Wis. Mar. 21, 2013) (granting conditional certification of a class of approximately 1,000 nurses across 25 hospital units claiming to be subject to an automatic meal break deduction but the frequency of interrupted meal breaks made it impractical to cancel every interrupted break);

15. *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852 (N.D. Ill. 2013) (granting conditional certification of a class of nurses and hospital employees who were engaged in the direct care of patients); and

16. *Ohsann v. L.V. Stabler Hosp.*, No. 2:07-CV-0875-WKW, 2008 WL 2468559 (M.D. Ala. June 17, 2008) (granting conditional certification of a class of hourly paid employees found to be similarly situated under the automatic meal deduction policy and similar reasons for working during the unpaid meal period—a heavy workload due to understaffing a 24-facility and situations that sometimes require urgent care).

Likewise, this Court should grant conditional certification and authorize notice in this case.

Plaintiff here has narrowly tailored the class of employees who should receive notice. At this time, Plaintiff seeks certification of a class of nurses from only three of the seven Methodist hospitals.[56] At this time, to avoiding wasting the damages for nurses who have valid claims, Plaintiff seeks notice for the hospitals where nurses have stepped forward with details and specific personal knowledge of the alleged wage violation. Moreover, Plaintiff here seeks to notify a class of only **nurses**, not all employees who were subject to the automatic meal deduction, which on information and belief, applied to virtually all hourly workers. **That is, the class is narrowly tailored to the group of workers who performed Plaintiff's job as a nurse.** Plaintiff currently does not seek to provide notice to all health professionals responsible for direct patient care, but only nurses.

### D. The proposed notice is timely, accurate and informative. The notice should be sent via regular mail and via email.

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Use of court-authorized notice also prevents "misleading communications." *Id.* at 172.

---

[56] Frankly, Plaintiff believes discovery will reveal the violation applies to all seven hospitals.

The Plaintiff's proposed court-approved notice[57] to the potential opt-ins is "timely, accurate, and informative," as required. *Id.* The notice provides information as to the pendency of the action and of the opportunity to opt in. Plaintiff's legal claims are accurately described. It advises potential opt-ins they are not required to participate. The notice provides clear instructions on how to opt-in and accurately states the prohibition against retaliation or discrimination for participation in the FLSA action. *See* 29 U.S.C. § 215(a)(3); *Reich v. Davis*, 50 F.3d 962, 964 (11th Cir. 1995).

Plaintiff proposes that the notice and consent forms be mailed by first class mail **and by electronic mail** to all potential opt-ins employed by Defendant at any time from three years prior to the granting of this Motion to present, i.e., the Class Members.[58] Plaintiff's counsel will

---

[57] App. p. 1–3 (Notice of Rights).

[58] Email notice is a common form of notification in FLSA cases. *See Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 6928101 *5 (N.D. Tex. Nov. 29, 2012) (rep. and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) ("The attached form of notice should be approved by the Court, as should Plaintiffs' request to provide notice to the conditionally certified class via regular mail and email"); *See Zannikos v. Oil Inspections (U.S.A.) Inc.*, No. 4:12-cv-02508 (S.D. Tex. May 14, 2013) (order allowing email notice); *See Phelps v. MC Comm'ns, Inc.*, No. 2:11-CV-00423-PMP-LRL, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011) (The Court will permit Plaintiffs to email the notice to those employees for whom Defendants have email addresses, as well as send it by first class mail. Email is an efficient, reasonable, and low-cost supplemental form of notice, particularly where Defendants may lack current physical mailing address information for its former employees.); *Goudie v. Cable Commc'ns, Inc.*, No. 08-CV-507-AC, 2008 WL 4628394, 9 (D. Or. Oct. 14, 2008) ("The court concludes that the names, addresses, phone numbers, and e-mail addresses of technicians are sufficient to permit notice and communication with potential members of the putative collective action."); *Beall v. Tyler Techs., Inc.*, No. 2-08-CV-422, 2009 WL 3064689, at *1 (E.D. Tex. Sept. 23, 2009) (Court granted class notice via email.); *Eggelston v. Sawyer Sportsbar, Inc.*, No. 4:09-3529, 2010 WL 2639897 at *4 (S.D. Tex June 28, 2010) (Court granted class notice via email); *In re Deloitte & Touche, LLP Overtime Litig.*, No. 11-CIV-2461, 2012 WL 340114 at *2 (S.D.N.Y. Jan. 17, 2012); *White v. Integrated Elec. Techs., Inc.*, No. 11-2186, 2013 WL 2903070, at *9 (E.D. La. June 13, 2013) (**"Plaintiffs have submitted ample authority indicating that federal district courts, including courts in the Eastern District of Louisiana and the Fifth Circuit, frequently utilize e-mail to provide notice of collective actions to potential class members."**); *Butler v. Directsat USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) ("Plaintiffs may, therefore, notify other potential plaintiffs of this action by first-class mail and by email..."); *Pippins v. KPMG LLP*, No. 11-CIV-0377, 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) ("[G]iven the reality of communications today...the provision of email addresses and **email notice** in addition to notice by first class mail is entirely appropriate"); *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755, 2011 WL 3235628, at *3 n.3 (E.D.N.Y. July 27, 2011) ("[T]he Court sees **email** as a relatively unobtrusive option" for providing notice to class members); *Denney v. Lester's, LLC*, No. 4:12-CV-377-JCH, 2012 WL 3854466 at *4 (E.D. Mo. Sept. 5, 2012) ("Court finds fair and proper notice to current and former servers will be accomplished by regular mail, **electronic mail**..."); *Santiago v. Amdocs, Inc.*, No. C-10-4317-SI, 2011 WL 6372348, at *8 (N.D. Cal. Dec. 19, 2011) (Notice shall be "disseminated via **electronic mail**..."); *Altier v. Worley Catastrophe Response, LLC*, No.

oversee the mailing (both regular mail and electronic mail) of such notices and incur the charges for same (postage, copying, etc.). Plaintiff's counsel requests that it be permitted to hire a third party class action administration company to oversee the mailing of the notice and forms if it deems appropriate. Those Class Members interested in participating would be required to return consents to Plaintiff's counsel for filing with the Court within sixty days of the mailing.

Plaintiff further requests that Class Members be given the option to execute their consent forms online through an electronic signature service. This service allows Class Members to sign their consent forms electronically by clicking on a link in an encrypted email designated only for that user, which in turn takes them to a website where they can review the document they are signing, click a box indicating they have read and understood the consent form and insert information such as their name and address.[59] Users are instantaneously provided with a PDF copy of the form they signed and a copy of the form is made accessible to Plaintiff's counsel who will, in turn, file same with the Court, just as if such document had been received via regular mail. This case begs for such present-day methods of communication and transacting business given the large size of this class. This would merely be an additional option for signing the consent form.[60] Finally, Plaintiff proposes that notice be sent to the putative class members twice, both via mail and electronically: the first time within seven days of receiving the list of

---

11-241, 2012 WL 161824, at *27 (E.D. La. Jan.18, 2012); *Nobles v. State Farm Mut. Auto. Ins. Co.,* No. 2:10-CV-04175-NKL, 2011 WL 3794021, at *10 (W.D. Mo. Aug. 25, 2011).

[59] *See* App. p. 127 (Sample Right Signature Consent to Collective Action).

[60] In Texas under the TEX. BUS. & COM. CODE ANN. § 322 *et. seq*, the law recognizes the validity of electronic signatures. Specifically, it states that a "signature may not be denied legal effect or enforceability solely because it is in electronic form." TEX. BUS. & COM. CODE ANN. § 322.007. Further, it proceeds to state that "if a law requires a signature, an electronic signature satisfies the law." *Id.* In this instance, the FLSA requires a plaintiff to file a written consent form in order to join the lawsuit. *See* 29 U.S.C.A. § 216 ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *See also*, 29 U.S.C.A. § 256. Consequently, Texas law allows for the use of electronic signatures to be used to execute FLSA consent forms.

putative class members from Defendant and a second time thirty days after, but only to those class members who have not joined at that time.

Those class members interested in participating would be required to file their consents with the Court within sixty days of the mailing. This is consistent with established practice under the FLSA.

**E.  The proposed limited discovery is essential to ensure timely notice.**

Discovery of a mailing list and contact information for class members in a computer-readable format is a necessary component of notice in collective actions. Defendant should therefore be ordered to produce the names, all known addresses, all phone numbers (home, mobile, etc.), dates of birth, all known email addresses (work and personal), driver's license numbers, social security numbers, and dates of employment for all the class members employed at any time during the three years preceding the granting of this Motion to the present.[61]  All of the requested information is necessary, including dates of birth, to allow Plaintiff sufficient information to confirm current addresses and/or to locate those persons who may have moved from their last known address.  Production of all known personal and business email addresses is particularly important because such contact information does not change when a person moves, and email notice is an efficient and convenient form of communication. Without this

---

[61] *Jones*, 2012 WL 6928101, at *5; *See Eggelston*, 2010 WL 2639897, at *4 (order conditionally certifying class of bartenders and granting expedited discovery of **telephone numbers and emails**); *McCarragher v. Ryland Grp., Inc.*, No. 3-11-55, 2012 WL 4857575 at *6 (S.D. Tex. Oct. 11, 2012) ("must provide…**e-mail addresses, telephone numbers**…of the members of the collective action class."); *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 996 (E.D. Tex. 2011) ("**ORDERS** the Defendants to provide…names, job titles, addresses, **telephone numbers**, Social Security numbers, and **email addresses**, if available, of the potential class members."); *Beall*, 2009 WL 1766141, at *4 ("orders defendants to provide…names, job titles, addresses, **telephone numbers**, Social Security numbers, and **email addresses**..."); *Luvianos v. Gratis Cellular, Inc.*, No. H-12-1067, 2012 WL 6737498 (S.D. Tex. Dec. 10, 2012) report and recommendation adopted, 2012 WL 6743559 at *10 (S.D. Tex. Dec. 28, 2012) ("disclosure to Plaintiffs' counsel of employees'…**phone numbers, and email addresses**…is not unduly invasive."); *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010) ("orders that Defendant produce…**phone numbers, and e-mail addresses**..."); *Davis v. Mostyn Law Firm, P.C.*, No. 4:11-CV-02874, 2012 WL 163941 at *11 (S.D. Tex. Jan. 19, 2012) ("shall provide…**all email addresses (personal and work)** for all class members as defined above."); *Walker*, 870 F. Supp. 2d at 473 ("Defendant to produce,…work **email addresses**…").

information, the notices are more likely to be returned due to outdated or inaccurate addresses. This in turn will result in Plaintiff requesting an extension of the opt-in period to accommodate those class members, thereby delaying the timely resolution of this matter. In addition, providing phone numbers allows Plaintiff to verify the accuracy of the list by contacting former employees to determine if they are aware of anyone who was subject to the same payroll practice, but whose name was omitted from the list.

## IV. CONCLUSION

At this preliminary stage, Plaintiff has come forward with a sufficient factual basis from which this Court can determine that similarly situated employees exist who would join this litigation if notice is issued. Therefore, the Court should grant Plaintiff's Motion and provide the following relief to Plaintiff:

(1) Conditionally certify this case as a collective action under 29 U.S.C. § 216(b) with respect to a class of Defendant's current and former nurses responsible for direct patient care, who worked at least forty hours in a single workweek and were subject to an automatic meal break deduction, and worked at either Houston Methodist Hospital, Houston Methodist Willowbrook Hospital, or Houston Methodist San Jacinto Hospital at any time from three year prior to the granting of this Motion to the present ("Class Members");

(2) Require Defendant to produce within ten days of the granting this Motion in a computer readable format, the names, all known addresses, all phone numbers (home, mobile, etc.), dates of birth, all known email addresses (work and personal), driver's license numbers, social security numbers, and dates of employment for all class members ("Class List").

(3) Authorize mailing of the proposed Notice and Consent Form (App. p. 1–3 and App. p. 4–5, respectively) to Class Members via regular mail and email within seven days of Plaintiff's counsel receiving the class list from Defendant, and allow Plaintiff's counsel to hire a third party class action administration company if they deem appropriate;

(4) Allow Class Members to execute their consent forms electronically via Right Signature;

(5) Approve that notice be sent to the putative class members twice, both via mail and electronically: the first time within seven days of receiving the list of putative class

22

members from Defendant and a second time thirty days after, but only to those class members who have not yet submitted their Consent Forms.

Respectfully submitted,

KENNEDY HODGES, L.L.P.

By:  /s/ *David W. Hodges*
      David W. Hodges
      dhodges@kennedyhodges.com
      Texas State Bar No. 00796765
      Federal Bar No. 20460
      711 West Alabama St.
      Houston, Texas 77006
      Telephone: (713) 523-0001
      Facsimile: (713) 523-1116

      ATTORNEY IN CHARGE FOR PLAINTIFF AND CLASS MEMBERS

OF COUNSEL
Galvin B. Kennedy
gkennedy@KennedyHodges.com
Texas State Bar No. 00796870
Federal Bar No. 20791
711 W. Alabama St.
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules of Civil Procedure 7.1(D), I certify I attempted in good faith to confer with opposing counsel concerning this motion and defense counsel is opposed to the relief requested.

/s/  Galvin B. Kennedy
Galvin B. Kennedy

## CERTIFICATE OF SERVICE

This is to certify that on June 24, 2014 a copy of the foregoing instrument was served upon all parties of record via the Court's electronic case filing system.

 /s/ Galvin B. Kennedy
Galvin B. Kennedy