**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOY CORCIONE, *et al.*, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. G-14-160 |
| | § | |
| METHODIST HOSPITAL, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Joy Corcione, a nurse at Methodist Hospital, has sued the hospital under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Corcione alleges that Methodist improperly denied her and other similarly situated nurses pay for meal breaks during which they were not completely relieved of job duties, and denied them overtime compensation as a result. Three other nurses — Susan Hall, Gisela Bryant, and Fatima Salem — have consented to join as opt-in plaintiffs. (Docket Entry Nos. 11, 26, 30).

Corcione has moved for issuance of notice to potential class members and conditional certification of an opt-in class. (Docket Entry No. 9). Methodist responded, Corcione replied, and Methodist surreplied. (Docket Entry Nos. 22, 35, 37). The court held a hearing on October 24, 2014, at which counsel presented argument. (Docket Entry No. 40).

Based on the pleadings; the motion, response, reply, and surreply; counsels' argument; the record; and the applicable law, the court grants Corcione's motion for conditional certification and orders notice issued to the potential class of nurses employed at Methodist's Texas Medical Center, Willowbrook, or San Jacinto locations at any time from November 13, 2011 to the present, who

were subject to an automatic deduction of their meal breaks and were either interrupted or were subject to interruptions during those breaks.  By December 12, 2014, Methodist must provide Corcione with the names, current or last known addresses and telephone numbers, and dates of employment of the class members.  By the same date, the parties must submit a proposed notice for the court to review, with any disputed language highlighted.  A status conference is set for **December 16, 2014**, at 8:30 a.m.

The reasons for these rulings are explained below.

## I.     Background

Corcione worked in the Dunn 9 cardiovascular unit at Methodist's Texas Medical Center location.  When Corcione and other nurses at Methodist's Texas Medical Center, Willowbrook, and San Jacinto locations worked 8-hour shifts, Methodist deducted a 30-minute meal break from their pay.  Corcione alleges that although the meal break was not compensated, Methodist required her and other nurses to be available during the break and to respond to frequent interruptions for work issues.  Corcione alleges that she and other nurses were still on duty even if they left their stations because they had to carry phones or pagers; respond to questions from doctors or other nurses; address patients' medical needs, test results, and families' concerns; and respond to "codes." (Docket Entry No. 1).  Corcione contends that because the meal-break time was not included in the nurses' paid hours, Methodist improperly recorded that the nurses did not work more than 40 hours per week and denied them overtime pay.  (*Id.*).

Methodist responded that its policies discourage meal-break interruptions and state that employees should turn off their pagers or phones or give them to on-duty employees during the meal break.  (Docket Entry No. 22 at 5).  Methodist also allows employees whose meal breaks are

2

automatically deducted to manually reverse the deduction if work interruptions reduce their actual break to less than 20 minutes.  Methodist instructs such employees to log in to the time-recording system at the end of their shifts and enter a "No Lunch" code to signify that they should be paid for the meal break.  (*Id.*).  Employees can also manually revise the entry to show payment for part of a meal break that was interrupted by work.  (*Id.*).

The parties conducted limited discovery and presented declarations from nurses in the putative class.  The nurses testified that 30 minutes was automatically deducted from their pay for a meal break when they worked 8-hour shifts, and that they were interrupted often during breaks to deal with patient-care issues.  (*See* Docket Entry No. 22, attached declarations).  Not all of the nurses were aware that they could remove the automatic meal-break deduction.  Some of the nurses reported that although they knew about the option, they did not regularly use it.  (Docket Entry Nos. 22 at 10–12; 35, Ex. 6).

The nurses reported variations in how the meal-break policy was implemented.  Some nurses testified that they were not required to carry phones or pagers during their meal break, even if they left their duty stations.  Others testified that they used a "buddy system" during the meal break and gave their phones or pagers to the nurses who were on duty then.  (Docket Entry No. 22 at 7–9, 18–22).  Most of the nurses testified that they were permitted to leave Methodist's premises during their breaks.  Corcione, however, claimed that she was required to stay at her station during the break.  (*Id.* at 9–11; 22–23; Docket Entry No. 9, Ex. 3, Appendix at 6–8).

Corcione alleges that Methodist violated the FLSA by:

- requiring nurses to be available to respond to patient-care issues during uncompensated meal breaks, either by carrying a device or otherwise making themselves reachable;

3

- requiring nurses to perform work duties during uncompensated meal breaks; and

- imposing on nurses the burden of manually reversing the automatic deduction when they had to work during meal breaks, instead of classifying the breaks as compensable by default and requiring manual deduction if the break was noncompensable.

## II.    The Legal Standard

Section 216(b) of the FLSA establishes an opt-in collective action.  29 U.S.C. § 216(b). Plaintiffs must affirmatively notify the court of their intention to become parties by opting-in to the action.  *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995).  Notice to potential plaintiffs does not issue unless a court conditionally certifies the case as a collective action.  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989); *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 809 (S.D. Tex. 2003).

Courts use two methods to decide whether to authorize notice to similarly situated employees advising them of their opt-in rights: the two-step *Lusardi* approach and the class-action-based *Shushan* approach.  *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990).  Most courts, including district courts in this circuit, use the *Lusardi* approach rather than the Rule 23 requirements.  *See, e.g.*, *Maynor v. Dow Chemical*, 671 F. Supp. 2d 902, 930–31 (S.D. Tex. 2009); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004) (stating that most courts have used or implicitly approved the two-step method); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) (noting that "the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23"); *Mooney*, 54 F.3d at 1217 (declining to mandate

4

either theory); *LaChapelle v. Owens-Ill., Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (finding a fundamental difference between Rule 23 class actions and FLSA collective actions).

The first *Lusardi* step is to decide whether to issue notice to potential class members. *See Mooney*, 54 F.3d at 1213–14. The court's decision at this stage is often based only on the pleadings and any affidavits that have been submitted. *Id.* "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt in. *Id.* at 1214. A plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. *See Prater v. Commerce Equities Mgmt. Co.*, No. H-07-cv-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007); *Simmons v. T-Mobile USA, Inc.*, No. H-06-cv-1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007).

A factual basis for "substantial allegations" that potential class members were "together the victims of a single decision, policy, or plan" is needed to satisfy the first step. *Id.* (citing *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988). *See Hall v. Burk*, No. 3:01-CV-2487H, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002) (stating that "[u]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden"); *see also Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983). There must be a showing of identifiable facts or legal nexus that bind the claims so that hearing them together promotes judicial efficiency. "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *see also Barron v. Henry Cnty. Sch.*

5

*Sys.*, 242 F. Supp. 2d 1096, 1104 (M.D. Ala. 2003) ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").

If a court conditionally certifies, the case proceeds as a collective action during discovery. *See Mooney*, 54 F.3d at 1214. The second of *Lusardi*'s two analytical steps typically occurs when discovery is largely complete and the defendant moves to decertify the class. *See id.*; *Lusardi*, 118 F.R.D. at 359. At that point, the court factually determines whether the employees are similarly situated. *Mooney*, 54 F.3d at 1214. If so, the collective action proceeds. *See id.*; *Basco v. Wal-Mart Stores, Inc.*, No. 00-cv-3184, 2004 WL 1497709, at *3 (E.D. La. July 2, 2004). If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *England*, 370 F. Supp. 2d at 508. Neither the first nor second stage is an opportunity for the court to decide the merits by deciding factual disputes or making credibility determinations.

This case is at the notice stage of the *Lusardi* analysis, deciding conditional certification. This stage often occurs before any discovery. In this case, the parties have deposed Corcione, Hall, and some Methodist employees; submitted deposition excerpts; and submitted other documents, including affidavits from nurses working at the three Methodist locations at issue. But there remains significant additional discovery, including initial disclosures. The fact that some discovery has been conducted does not increase Corcione's burden at this stage to the more onerous standard that applies at the second, decertification stage. That standard is only appropriate "after discovery is largely complete and the matter is ready for trial." *Mooney*, 54 F.3d at 1214.

Methodist argues that conditional certification is inappropriate because there was no common policy for implementing meal breaks and because the policies implemented did not violate the

FLSA.  (Docket Entry No. 22).  Corcione has met her light burden of showing the existence of a common policy of automatically deducting nurses' meal breaks but requiring them to remain on duty during those breaks.  Corcione presented evidence showing that many of the nurses at the three Methodist locations were subject to the automatic deduction policy, that many of those nurses were required to be available to respond to work issues during those breaks, and that while some breaks were not significantly interrupted, many were.  (Docket Entry No. 9, Ex. 3, Appendix at 6–14; *see also* Docket Entry No. 22, attached declarations).  Most of the nurses providing affidavits stated that they were interrupted at least some of the time during many of their meal breaks.  (Docket Entry No. 35, Ex. 6, Summary of Methodist Nurse Declarations).  Methodist's Human Resources Director testified that nurses were expected to respond to certain types of interruptions during breaks.  (Coggins Depo. at 74–77).  The evidence showed while Methodist has a procedure for the nurses to manually reverse the automatic deduction if they were actually interrupted during a meal break, the reversal mechanism was not widely used and did not apply if the nurses followed instructions to be available to respond to interruptions, but were not interrupted. (Docket Entry Nos. 22 at 10–12; 35, Ex. 6).

The record meets the showing required at this stage.  All the nurses who provided affidavits stated that the automatic-deduction policy applied to them, and most stated that they were sometimes interrupted during their meal breaks.  There is a sufficient basis in the record to find a common policy, satisfying the lenient burden imposed at this stage of the certification analysis.  While a plaintiff must show a reasonable basis for alleging that a class of similarly situated persons exists, uniformity is not necessary.  *See Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 691 (S.D. Tex. 2013); *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 803–04 (S.D. Tex. 2010); *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007).  "[T]he 'similarly

7

situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in

Rule 20 (joinder) and Rule 42 (severance) [, so] a unified policy, plan, or scheme of discrimination

may not be required to satisfy . . . § 216(b)." *Grayson*, 79 F.3d at 1095; *see also Falcon v. Starbucks*

*Corp.*, 580 F. Supp. 2d 528, 534–35 (S.D. Tex. 2008) (collecting cases).

Methodist argues that the proposed class would require individualized inquiries into each

unit's policies on requiring nurses to carry phones, radios, or pagers during breaks and into how

frequently the breaks were interrupted by work issues.  Courts have refused to certify FLSA suits

if individualized inquiries would eliminate the economies of scale the FLSA collective action

procedure is designed to achieve. *See Donihoo v. Dallas Airmotive, Inc.*, No. 3:97-CV-0109-P, 1998

WL 91256, at *1 (N.D. Tex. Feb. 23, 1998) ("[A]n inquiry into the employee's specific job duties

. . . is not appropriate in a class lawsuit under Section 216(b).").

The plaintiffs have limited the scope of the proposed class to those nurses who were subject

to interruption or actually interrupted during their meal breaks.  There is no dispute that the putative

class members were subject to a policy that automatically deducted a 30-minute meal break from

their pay, and they were all expected to be available for work during that break.  The alleged FLSA

violations resulted from Methodist's failure to relieve the nurses of their duties during times

designated as uncompensated unless each nurse manually reversed the meal-break deduction when

he or she did not receive the full benefit of the meal break due to significant work interruptions

(more than 10 minutes of a 30-minute break).  Any individualized inquiry into the frequency or

length of the nurses' interruptions would be relevant to damages, but not to whether the common

policy violated the FLSA.

Most courts have held that in off-the-clock unpaid-overtime cases, the need to determine

class members' damages on an individualized basis should not bar conditional certification if the

8

proposed class is otherwise similarly situated. *See, e.g.*, *U.S. Dept. of Labor v. Cole Enters.*, 62 F.3d 775, 781 (6th Cir. 1995) (affirming district court's entry of judgment in favor of Secretary of Labor in "off the clock" case and approving use of estimates in calculating back wages due); *Clarke v. Convergys Customer Mgmt. Group, Inc.*, 370 F. Supp. 2d 601, 606 (S.D. Tex. 2005) (rejecting an argument that the inherently individualized nature of damages in off-the-clock overtime claims make them unfit for collective treatment).

Methodist also challenges the validity of Corcione's theory of liability under the FLSA. Methodist argues that an employer may deduct an employee's meal breaks if the employee experiences only "infrequent, brief interruptions" during the break, as long as the break predominantly benefits the employee and not the employer. (Docket Entry No. 22 at 32). The parties have submitted conflicting evidence on whether the nurses or Methodist predominantly benefitted from the meal breaks. Corcione testified that she was required to stay at her station and regularly worked during her meal break. Other nurses also stated that they were repeatedly interrupted with work demands. Methodist submitted declarations from some nurses who stated their units followed policies or practices that minimized such interruptions. (*Id.* at 26–27).

The Fifth Circuit has held that an employee who is required to remain available during meal breaks and is interrupted frequently by superiors does not receive the predominant benefit of the meal breaks and is entitled to be paid for that time. *See Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 262–65 (5th Cir. 1999). In *Bernard*, a class of maintenance workers were required to wear radios during their lunch breaks and were frequently interrupted by work. *Id.* "Even when their breaks were not interrupted, the plaintiffs testified that they were not free to do as they pleased. They were required to stay on the premises, and supervisors often used the meal break as a time to meet with their maintenance crews to discuss the afternoon work schedule." *Id.* at 262–63. The

9

Fifth Circuit upheld the jury's finding that the breaks were not bona fide meal periods because the plaintiffs were not "'completely relieved from duty for the purpose of eating meals' during that period." *Id.* at 264 (quoting 29 C.F.R. § 785.19).

Methodist relies on *Lee v. Coahoma County, Mississippi*, 937 F.2d 220, 225 (5th Cir. 1991), to argue that an employer is not required to completely relieve employees of their duties during uncompensated meal breaks. In *Lee*, the Fifth Circuit found that a 20-minute break period was noncompensable when the employees "were allowed to go where they pleased during the break" and were only called back "in an occasional emergency." *Id.* at 225. In *Lee*, the Fifth Circuit did not address allegations that the employees were expected to be available to respond to interruptions that were neither occasional nor emergencies. In both *Lee* and *Bernard*, the district court was at the liability stage, and the Fifth Circuit did not suggest that a class should not be conditionally certified. Methodist's arguments on the merits of Corcione's FLSA allegations do not support denying conditional certification. *See Lee*, 980 F. Supp. 2d at 767; *Nieddu*, 977 F. Supp. 2d at 691; *McKnight*, 756 F. Supp. 2d at 803.

The case law supports conditionally certifying a class of employees subject to an automatic meal-break deduction who were required to be available for work-related interruptions during those breaks. In *Aguilera v. Waukesha Memorial Hospital, Inc.*, No. 13-C-1245, 2014 WL 4080158, at *4 (E.D. Wis. Aug. 18, 2014), the putative class members were caretakers subject to an automatic deduction policy for meal breaks. The plaintiffs presented evidence showing that the potential class members were required to be available to respond to a radio call or page during their breaks and were subject to discipline if they failed to respond promptly. *Id.* The defendants argued that the caretakers were able to use the time-keeping system to reverse the automatic deductions if they were actually interrupted during their meal breaks. The court found that the automatic-deduction policy

10

and the requirement that employees be available for work interruptions, were sufficient for certification, even if employees were not in fact interrupted during the breaks.  *Id.*  The opportunity to manually reverse the deduction did not defeat certification.  The court cited cases conditionally certifying "collective actions based solely on the theory that these cancellation procedures inappropriately shift the employer's responsibility to ensure compensation for work suffered or permitted to the employee."  *Id.* at *5.[1]

In *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 196–97 (N.D.N.Y. 2009), the court conditionally certified a class of nurses who had "direct patient care responsibilities" that, in combination with short staffing, resulted in the nurses "routinely working through or during scheduled meal breaks, without compensation and with the hospital administration's knowledge.  Similarly, in *Hintergerger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 WL 3464134, at *2 (W.D.N.Y. Oct. 21, 2009), nurses who were subject to an automatic meal-break deduction had to work on patient-care issues through all or part of their meal breaks.  The court granted conditional certification of a class of nurses subject to the policy.  *Id.* at *5.  In *Carter v. Jackson-Madison Cnty. Hosp. Dist.*, No. 1:10-CV-01155-JDB, 2011 WL 1256625, at **7, 16 (W.D. Tenn. Mar. 31, 2011), the putative class members were all subject to an automatic meal-break deduction policy.  They alleged that they were not fully relieved of their duties during uncompensated meal breaks because

---

[1] In *Aguilera*, the court quoted *Brabazon v. Aurora Health Care, Inc.*, No. 10-cv-714, 2011 WL 1131097, at *13 (E.D. Wis. March 28, 2011), and cited *Kuznyetxov v. W. Penn Allegheny Health Sys.*, No. 09–CV–379, 2009 WL 1515175, at *5 (W.D. Pa. June 1, 2009); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09–85J, 2009 WL 1361265, at *4 (W.D. Pa. May 14, 2009)).  *See also Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 760–61 (W.D. Tenn. 2011) (granting conditional certification when the plaintiffs claimed that an automatic meal-break deduction impermissibly shifted the burden of establishing that unpaid periods were noncompensable from the employer to the employee).  *Id*. at *5.

they had to respond to "requests by patients, coworkers, and supervisors." *Id.* at \*7.  The court granted conditional certification, finding that the potential class members were subject to a common policy of having to remain on duty during uncompensated meal times.  *Id.* at \*16.

Courts have denied conditional certification in cases involving similar claims, but under circumstances different from those present here.  In *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 54–55 (D.D.C. 2012), the class was not conditionally certified because the plaintiffs did not allege that employees had to work or be available to work on their meal breaks or that the hospitals were "imposing limitations on, discouraging, or ignoring efforts to recover pay for missed meal breaks."  In *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 208 (N.D.N.Y. 2009), the court conditionally certified a class of nurses subject to an auto-deduct policy, but declined to include other hourly workers in the class because there was no showing that "by virtue of attending to patient care needs, [they had] the need regularly to work through or during scheduled meal breaks, without compensation."  In *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-cv-592-FDW-DSC, 2011 WL 4351631, at \*7 (W.D.N.C. Sept. 16, 2011), the court denied conditional certification because "there was no common, CHS-wide policy which required all non-exempt nurses and NAs employed in in-patient facilities to carry signaling devices to lunch, or which required nurses and NAs to be 'on-call' during their lunch breaks" and the implementation of lunch breaks was subject to "decentralized discretion."  In *Saleen v. Waste Management*, No. 08-cv-4959 (PJS/JJK), 2009 WL 1664451, at \*5 (D. Minn. June 15, 2009), the plaintiffs did not allege that they were interrupted or interruptible during their meal breaks, but alleged that they worked during the entirety of their meal breaks.  The court denied conditional certification because the company's policy stated that deductions should be reversed under those circumstances and the putative plaintiffs had asserted many different reasons why they did not claim the reversal, including ignorance of any opportunity

to do so, lack of time to make the request, and misinformation from their superiors.  *Id.*  Together, these cases show that conditional certification is warranted when the putative class members are all affected by an automatic deduction policy and were subject to interruptions or actually interrupted on a regular or recurring basis during their meal breaks.

At this early stage, in a motion for conditional certification, it is not appropriate to require the plaintiffs to produce evidence sufficient to survive summary judgment or to test the merits beyond showing that potential class members are similarly situated.  *McKnight*, 756 F. Supp. 2d at 803.  Granting Corcione's motion for notice to the potential class is, of course, without prejudice to Methodist's ability to make similar arguments for pretrial disposition under the rules intended to test the merits of the claims and defenses.

A third *Lusardi* question is whether the evidence shows that other aggrieved employees want to join the class.  "[A] plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit."  *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007). "Affidavits from potential class members affirming their intention to join the suit are ideal for an analysis of whether 'the putative class members were together the victims of a single decision, policy, or plan.'"  *Simmons*, 2007 WL 210008, at *9 (quoting *Mooney*, 54 F.3d at 1214 n.8). "However, affidavits *per se* are not required and a named plaintiff may submit some other form of evidence that the additional aggrieved persons exist and want to join the suit."  *Id.*  "[A] district court should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Id.* (quoting *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1568 (11th Cir. 1991)) (internal quotations omitted).  "It is conceivable that in certain circumstances, such as when an employee

13

worked for an employer for only a short period of time, it might be appropriate to permit some discovery as to the identity of other similarly situated employees," but "an FLSA plaintiff is not entitled to conditional certification simply to seek out others who might wish to join the action." *Parker*, 492 F. Supp. 2d at 1166, 1167 n. 6.

Corcione submitted declarations from Shirley Lute and Robert McCray, two nurses in the putative class, who expressed their belief that other nurses would be interested in joining this suit. (Docket Entry No. 9, Ex. 3, Appendix at 8–14). This litigation has already attracted three opt-in plaintiffs, Susan Hall, Gisela Bryant and Fatima Salem. *See Prater*, 2007 WL 4146714, at *8 (three plaintiffs' presence in lawsuit showed interest in the litigation, even in the absence of affidavits). Corcione has produced sufficient evidence that other aggrieved nurses at the three Methodist locations would want to join the collective action.

## IV.    Conclusion

Corcione's motion for conditional certification and issuance of notice to potential class members is granted. Based on the present record, the following class is conditionally certified:

> nurses employed at Methodist's Texas Medical Center, Willowbrook, or San Jacinto locations at any time during November 13, 2011 to the present, who were subject to an automatic deduction of their meal-break times and who were either interrupted or were subject to interruptions during a substantial number of their meal breaks.

By December 12, 2014, Methodist must provide Corcione with the names, current or last known addresses and telephone numbers, and employment dates of the class members. By the same date, the parties must submit a proposed form of notice for the court to review, identifying disputed language. The parties must appear on **December 16, 2014** at 8:30 a.m. in Courtroom 11-B for a status conference.

SIGNED on November 14, 2014, at Houston, Texas.

14

Lee H. Rosenthal
United States District Judge

15